# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| TRACY K. BARKER, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-2677 |
| | § | |
| HALLIBURTON COMPANY, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM ORDER AND OPINION

Pending before the court is defendants' motion to compel arbitration, to stay proceedings, and for imposition of sanctions.  Dkt. 40.  Upon consideration of the motion, response, reply, surreplies, and the applicable law, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On July 22, 2004, Tracy Barker signed an employment agreement with one of the defendants, Service Employees International (collectively "the Halliburton defendants") and, in September 2004, went to work in Baghdad, Iraq as a civilian contractor in the Halliburton defendants' Procurement Department.  She alleges that while she was there, she was housed in predominantly male barracks, and she was constantly subjected to sexually explicit comments, and verbal and physical threats of abuse.  She describes her work environment as oppressive and abusive.  And, although she and other coworkers allegedly reported the behavior to various levels of management, the Halliburton defendants did nothing to alleviate the problems.   In fact, Barker alleges that the Halliburton defendants not only ignored her complaints, but also subjected her to further intimidation and retaliation.  Barker alleges she was locked in a room and interrogated by human resources personnel for several hours.   She further alleges that her complaints regarding sexual harassment were

circulated among the staff "in an effort to incite retaliatory action." Dkt. 53 at 9. When she was transferred to Basrah, Iraq on March 11, 2005, Barker's situation did not improve. Still surrounded by offensive daily instances of physical and verbal sexual misconduct, Barker alleges she now had to endure harassment from her direct supervisor. Since there was no human resources representative on site, Barker filed complaints with the Houston office of the Halliburton defendants, but to no avail. On June 21, 2005, Barker was allegedly sexually assaulted by a State Department employee, Ali Mokhtare.[1] In the wake of the attack, Barker alleges that her supervisor told her that he would protect Barker from Mokhtare in return for sexual favors. She refused him. Finally, the night before Barker was to leave Iraq, her supervisor allegedly entered Barker's living quarters on a pretext and sexually assaulted her. Traumatized by the attack several days earlier and suffering the effects of a sleep medication, Barker was unable to resist her attacker.

Upon returning home, Barker first filed a sexual harassment claim with the EEOC on January 19, 2006, and then filed an arbitration demand through the Halliburton defendants' Dispute Resolution Program ("DRP") on February 15, 2006. Dkt. 53, Ex. 3. Although the arbitration matter was still pending, in December 2006, on the advice of new counsel, Barker and her husband filed a civil suit against the Halliburton defendants, Ali Mokhtare, and the United States in the Eastern District of Texas, Beaumont Division. Dkt. 1. On July 24, 2007, the Beaumont court found venue to be improper and transferred the entire case to the Southern District of Texas, Houston Division. Dkt. 27. Barker later non-suited the United States. Dkt. 37.

---

[1] Barker's claims against that employee—Ali Mokhtare—have been severed from the instant suit and transferred to the Eastern District of Virginia. Dkt. 63.

On August 16, 2007, the EEOC issued its determination stating its findings that the Halliburton defendants retaliated against Barker following her good faith report of sexual harassment. Dkt. 53, Ex. 3. Futher, the EEOC found that, instead of addressing Barker's complaint, the Halliburton defendants attempted to orchestrate her termination. *Id.* Therefore, the EEOC found the Halliburton defendants to be in violation of Title VII. *Id.* On December 5, 2007, this court finding it lacked jurisdiction over Ali Mokhtare, severed Barker's claims against Mokhtare and transferred them to the Eastern District of Virginia where Mokhtare resides. Dkt. 63. The only claims remaining in the instant case are against the Halliburton defendants.

ANALYSIS

The Halliburton defendants move the court to compel Tracy Barker to arbitrate her claims in compliance with the arbitration clause contained in her employment agreement. Dkt. 40. They further ask the court to stay Galen Barker's claims pending the resolution of the arbitration. Additionally, they move the court for sanctions against Barker for unreasonably multiplying the proceedings.

## I.      Tracy Barker

On July 22, 2004, Tracy Barker signed an employment agreement with the Halliburton defendants. Dkt. 53, Ex. 6. Section 26 of the agreement contained an arbitration provision that provides in relevant part:

> You also agree that you will be bound by and accept as a condition of your employment the terms of the Halliburton Dispute Resolution Program which are herein incorporated by reference. . . .[A]ny and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim[s] arising in the workplace, [or claims] you have against [any] other parent or affiliate of Employer, must be submitted to binding arbitration instead of the court system.

3

*Id.*  The agreement also had a choice of law provision specifying that Texas law governed the contract, except as it related to the validity or enforceability of Section 26 which would be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*  Courts use a two-step inquiry to determine whether an arbitration clause is enforceable as it relates to the dispute at hand.  *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).  First courts must determine whether the parties agreed to arbitrate the dispute, and second the court must examine "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346 (1985)).

> **A.    Did the Parties Agree to Arbitrate the Dispute?**

This first question "depends on two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement.  *Id.* (citing *Webb v. Investacorp*, 89 F.3d 252, 257 (5th Cir. 1996)).

> 1.    Is There a Valid Agreement?

Whether there is a valid agreement between the parties is determined according to state law—in this case Texas law.  *Banc One*, 367 F.3d at 429.  "While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate."  *Id.* (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)).  Texas law is the same and will not invalidate an arbitration agreement absent compelling reasons of law or equity for the revocation of a contract, like fraud or unconscionability.  Tex. Civ Prac. & Rem. § 171.001; *Emerald Tex., Inc. v. Peel*, 920 S.W.2d 398, 402 (Tex.

App.–Houston [1st Dist.] 1996, no writ).   There is no dispute that Barker signed the employment agreement.  However, she offers several reasons why the agreement is void or voidable.

First, she argues that the contract is void because it was fraudulently induced.  Under the Supreme Court's severability doctrine as outlined in *Prima Paint*, "[o]nly if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator."  *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 218 (5th Cir. 2003) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403, 87 S. Ct. 1801 (1967); *Primerica Life Ins. Co v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002)).   Therefore, any arguments that Barker makes regarding fraudulent inducement must relate solely to the arbitration provision itself for this court to consider them.  *Primerica*, 304 F.3d at 472.

Barker argues that the Halliburton defendants did not tell her prior to signing the contract that she would be exposed to such abusive conditions.  Dkt. 53 at 24.  She further argues that the contract expressly states that sexual harassment and discrimination would not be tolerated.  *Id.*  She contends that the Halliburton defendants represented to her that her workplace problems would be handled professionally and appropriately.  And, she concludes that since the Halliburton defendants knew or were at least in reckless disregard of the falsity of these statements, the arbitration provision was fraudulently induced and is therefore void.  These arguments cannot be said to relate solely to the arbitration provision.  Barker, herself, in her response does not make a distinction between inducement to enter the employment contract and inducement to accept the arbitration provision.  She argues that "[s]uch representations were material to both the terms of the contract and to the acceptance of the arbitration agreement."  *Id.*  Therefore, under the severability doctrine of *Prima*

5

*Paint*, the question of whether the contract and the arbitration clause as part of the greater whole were fraudulently induced must be presented to the arbitrator, not this court.

Barker further argues that the Halliburton defendants knew that they would not comply with the terms of the DRP itself and thus fraudulently induced Barker to accept it as a valid part of her employment contract. This argument could arguably survive the *Prima Paint* severability doctrine. However, it is at odds with Barker's argument below that she was not given the DRP when she signed the contract. She could not have relied on the terms of the DRP when she signed the contract if she did not know them. More importantly, she has presented no evidence that the Halliburton defendants have not complied with the DRP. In fact, it would appear based on the motion before the court that the Halliburton defendants do indeed wish to comply with the DRP and compel Barker to pursue her claims in arbitration. Therefore, this argument also fails.[2]

Next she argues that the contract is void because it is unconscionable. Texas law recognizes two types of unconscionability: procedural and substantive. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006). "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *Id.* (citing *In re Halliburton Co*, 80 S.W.3d 566, 571 (Tex. 2002)). Courts may consider both types of unconscionability when deciding whether to compel arbitration. *In re Halliburton*, 80 S.W.3d at 572.

---

[2] Additionally, Barker's claims include a breach of contract claim. This claim seems to conflict with her argument that the contract is void *ab initio*. *See Banc One Acceptance Corp v. Hill*, 367 F.3d 426, 430 (5th Cir. 2004). However, because it finds that Barker's fraudulent inducement claim applies to the entire contract, the court merely notes the inconsistency.

6

"The party contesting the contractual arbitration provision has the burden to show procedural unconscionability." *Fleetwood*, 280 F.3d at 1077 (citing *Smith v. H.E. Butt Grocery Co.*, 18 S.W.3d 910, 912 (Tex. App.–Beaumont 2000, pet. denied)).   In the rare instances where Texas courts have found an agreement to be procedurally unconscionable, one of the parties has been literally unable to understand the agreement. *Id.* (citing *Prevot v. Phillips Petroleum Co.*, 133 F. Supp. 2d 937 (S.D. Tex. 2001)(plaintiff spoke no English and agreement not translated); *In re Turner Bros. Trucking Co.*, 8 S.W.3d 370 (Tex.App.–Texarkana 1999, no pet.) (plaintiff was functionally illiterate)).   A simple imbalance in the sophistication of the parties is not sufficient to render an agreement unconscionable. *Id.*

The substantive unconscionability inquiry looks at the arbitration provision itself and asks whether "given the parties' general commercial background[s] and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001) (quoting TEX. BUS. & COM. CODE § 2.302 cmt.1).   Substantive unconscionability is intended to reach oppression and unfair surprise, not adjust the bargaining power between the parties. *Id.*   Arbitration agreements are not inherently unconscionable. *In re Palm Harbor Homes*, 195 S.W.3d at 677.

Barker argues that the arbitration provision is procedurally unconscionable because she was not given a copy of the DRP adopted by reference in the employment contract and was therefore unaware of the substance of the program.   Texas courts do not agree. *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) ("A contractual term is not rendered invalid merely because it exists in a document incorporated by reference . . . arbitration-related language is no exception to

7

this rule."); *In re Raymond James & Assocs.*, 196 S.W.3d 311, 320 (Tex. App.–Houston [1st Dist.] 2006, no pet.) (accounts holders bound by arbitration provision in client agreement even though they never received a copy).  "[A] party who signs a contract is charged with notice of its contents as a matter of law."  *D. Wilson Const. Co., Inc. v. McAllen Indep. Sch. Dist.*, 848 S.W.2d 226, 230 (Tex. App.–Corpus Christi 1992, writ dism'd w.o.j.).  Moreover, the Fifth Circuit has expressly held that "general assertions that [the plaintiff] did not read or understand the contractual documents or that [the defendants] did not explain the documents do not suffice to allege fraud in the making of the arbitration clause, but rather address the formation of the entire contract."  *Banc One*, 367 F.3d at 430-31.  Accordingly, this argument fails.

Barker also argues that the arbitration clause is procedurally unconscionable because she did not have equal bargaining power when she signed the agreement.  Assuming for the sake of argument that the arbitration agreement was a contract of adhesion, Texas law provides that adhesion contracts are not automatically unconscionable.  *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 608 (Tex. 2005).  "Under the FAA, unequal bargaining power does not establish grounds for defeating an agreement to arbitrate absent a well-supported claim that the clause resulted from the sort of fraud or overwhelming economic power that would provide grounds for revocation of any contract."  *Id.*  The court has already determined that Barker's enunciated fraud claims go to the entire employment contract and thus must be presented to the arbitrator pursuant to the *Prima Paint* severability doctrine.  And, the Texas Supreme Court has upheld "take it or leave it" offers to at-will employees.  *In re Halliburton Co.*, 80 S.w.3d 566, 572 (Tex. 2002) (citing *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228-29 (Tex. 1986)).  Therefore, an argument based on the inherent unfairness of the relationship between employer and employee is unavailing.

Barker argues that the arbitration clause is substantively unconscionable because an arbitration hearing is not open to the public like a trial, and therefore her Constitutional rights have been violated.  Even if Barker had the right to a public civil trial—which she does not,[3] it would be a derivative right of the right to a federal forum which she waived as part of her employment agreement.  *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711 (5th Cir. 2002).  That agreement reads in relevant part:

> [A]ny and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim[s] arising in the workplace, [or claims] you have against [any] other parent or affiliate of Employer, must be submitted to binding arbitration *instead of the court system.*

Dkt. 53, Ex. 6 (emphasis added).  Under Texas law, Barker is presumed to have read the agreement.  *Emerald Tex.*, 920 S.W.2d at 402.  And, the agreement contains a clear waiver of any right to the court system.  Dkt. 53, Ex. 6.  Therefore, any corollary rights have been validly waived.  *Am. Heritage*, 294 F.3d at 711.  Barker further argues that a lack of transparency oppresses women who enter into contracts with the Halliburton defendants unaware that they are placing themselves in danger.  However, whether the contract is oppressive to third parties is not germane to the question of whether the contract is oppressive for Barker.  Therefore, Barker has not demonstrated that the arbitration clause is invalid for unconscionability—procedural or substantive.

### 2.    Is the Dispute Within the Scope of the Arbitration Provision

Having determined that the parties have a valid agreement to arbitrate, the court now turns to a determination of the scope of the arbitration provision.  "[O]nce a court determines that an

---

[3] "[T]he Sixth Amendment confers the right to a public trial only upon a defendant and only in a criminal case." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 387, 99 S. Ct. 2898 (1979).  The Seventh Amendment does not confer a right to a *public* civil trial.  U.S. CONST. amend. VII.

9

agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring

arbitration and must resolve all ambiguities in favor of arbitration." *Banc One*, 367 F.3d at 429. The

court begins by looking at the language of the arbitration clause.

> You also agree that you will be bound by and accept as a condition of your
> employment the terms of the Halliburton Dispute Resolution Program which are
> herein incorporated by reference. . . .**[A]ny and all claims that you might have**
> **against Employer related to your employment**, including your termination, and
> any and all personal injury claim[s] arising in the workplace, [or claims] you have
> against [any] other parent or affiliate of Employer, must be submitted to binding
> arbitration instead of the court system.

Dkt. 53, Ex. 6 (emphasis added). The Fifth Circuit has held that arbitration clauses purporting to

cover all disputes 'related to' the employment agreement should be interpreted broadly to cover "all

disputes between the parties having a significant relationship to the contract regardless of the label

attached to the dispute." *Pers. Sec. & Safety Sys. v. Motorola, Inc.*, 297 F.3d 388, 393 (5th Cir.

2002) (quoting *Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1067 (5th

Cir. 1998)). Under Fifth Circuit case law, the court asks whether it can say "with positive assurance

that the arbitration provision in the [employment agreement] is not susceptible of an interpretation

that would cover those claims." *Id.* at 392 (internal quotations omitted). "With such a broad

arbitration clause, it is only necessary that the dispute 'touch' matters covered by the [contract] to

be arbitrable." *Pennzoil*, 139 F.3d at 1068.

In her amended complaint and again in her response to the motion to compel arbitration,

Barker states that she "does not dispute that **some** of the claims asserted **may** fall within the

**annunciated** terms of the arbitration provision of her employment contract with" the Halliburton

defendants. Dkt. 53 at 3. However, she argues that there are intentional torts that do not fall within

the provision's scope. *Id.* The extra-contractual claims in her complaint are: negligence, negligent

undertaking, sexual harassment and hostile work environment, retaliation, fraud and intentional infliction of emotional distress. Dkt. 5. The mere fact that some of these are tort claims does not make them any less arbitrable. *Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 23 (2d. Cir. 1995). Bearing in mind the broad nature of the arbitration provision and the strong federal policy favoring arbitration, the court examines Barker's claims in turn to see if they "touch" matters covered by the employment agreement.

Barker's negligence claim is based *inter alia* on the Halliburton defendants' alleged failure "to exercise ordinary or reasonable care in hiring, training, supervising and maintaining their employees," and "in providing a safe work environment." Dkt. 5 at 11. Barker's negligent undertaking claim alleges that the Halliburton defendants "negligently undertook to provide proper training, adequate and sufficient safety precautions (including adequate security measures), adequate and sufficient policies and procedures in the recruitment, training and placement of personnel in Iraq." *Id.* at 15. Barker's agency theories are predicated on the failure of the Hallibuton defendants' employees to follow company policies regarding, among other things, sexual harassment. *Id.* at 23. She also claims fraud in the inducement on the employment contract itself. *Id.* at 27. Additionally, her complaint alleges intentional infliction of emotional distress based on all of the foregoing. *Id.* at 31. All of these claims do not merely touch on her employment, they are entirely based on her employment. Additionally, her Title VII claims alleging sexual harassment and retaliation are by definition based on her employment. Therefore, all of her extra-contractual claims fall within the scope of her employment contract and thus the arbitration provision.

Barker argues that some of her claims are based on incidents that occurred outside the work environment. However, overseas employees do not have bright lines between their working time

and their leisure time.  Long established Fifth Circuit precedent holds that "[p]ersonal activities of a social or recreational nature must be considered as incident to the overseas employment relationship."  *O'Keefe v. Pan Am. Airways, Inc.*, 338 F.2d 319, 322 (5th Cir. 1964) ("Employees working under the Defense Bases Act, far away from their families and friends, in remote places where there are severely limited recreational and social activities, are in different circumstances from employees working at home. . . . An employee injured on Grand Turk while off-duty but on call is like a seaman injured ashore on fun of his own. Short of wilful misconduct, the seaman is still in the 'service of his ship.'") (citing *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 731, 63 S. Ct. 930 (1943)). Thus, even if the court found that the alleged incidents took place during Barker's leisure time—which it does not—those leisure time incidents would still fall under the employment contract.  Accordingly, all of Barker's claims fall within the scope of the employment agreement and its arbitration clause.

### B.      Legal Constraints External to the Agreement

Having determined that there is a valid agreement to arbitrate Barker's claims, the court moves to the question of whether legal constraints external to the parties' agreement foreclose submitting Barker's claims to arbitration.  *Fleetwood*, 280 F.3d at 1073.  "Just as it is the congressional policy manifested in the Federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable."  *Mitsubishi*, 473 U.S. at 627. Therefore, absent some showing that Congress expressly exempted one of Barker's types of claims from arbitration, the presumption under the Federal Arbitration Act is that arbitration must be compelled.  *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996).

12

The Supreme Court has held that statutory claims may be arbitrable as long as Congress has expressed no intent to the contrary. *Mitsubishi*, 473 U.S. at 626-27. And, the Fifth Circuit has held that sexual harassment and retaliation claims brought under Title VII are appropriate for arbitration. *Rojas*, 87 F.3d at 749; *see also Williams v. Cintas Corp.*, 169 Fed. Appx. 180, 180-81 (5th Cir. 2006) (per curiam); *Miller v. Pub. Storage Mgmt., Inc.*, 121 F.3d 215, 218-19 (5th Cir. 1997). The remainder of Barker's extra-contractual claims are torts: negligence, negligent undertaking, fraud and intentional infliction of emotional distress. "[T]he burden is on [Barker] to show that Congress intended to preclude a waiver of the judicial forum" for these claims. *Gilmer v. Interstate/Johnson Lane Corp*, 500 U.S. 20, 26, 111 S. Ct. 1647 (1991). The Fifth Circuit has upheld various courts' decisions to compel arbitration on tort claims like Barker's. *Downer v. Siegel*, 489 F.3d 623 (5th Cir. 2007) (fraudulent inducement of the contract); *Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271 (5th Cir. 2007) (negligence); *Hadnot v. Bay, Inc.*, 344 F.3d 474 (5th Cir. 2003) (intentional infliction of emotional distress). And, Barker has presented the court with nothing to show that Congress intended any different treatment of these claims. Therefore, in the absence of a manifestation of Congressional intent to the contrary, there are no external legal constraints to compelling arbitration on Barker's claims.

Barker argues that the arbitration provision serves as a smoke screen to hide the Halliburton defendants' repeated violation of the United States' employment laws allowing the Halliburton defendants to escape accountability time and again. Dkt. 53 at 5. She also argues that the fact that the Halliburton defendants created a sexually lawless environment into which it lured unsuspecting female employees is not the type of dispute that she could possibly have expected to be within the scope of the arbitration provision. *Id.* Moreover, even though the scope of an overseas employee's

job is broad, she urges that it is unthinkable that the scope of employment could extend to the employee's bedroom. *Id.* at 18.

She also alleges that the DRP is merely a tool of the Halliburton defendants. Because the Halliburton defendants decide when they will insist on arbitration and when they will not, it takes the choice of forum away from the employee. She argues that the arbitration itself will be unfair to her, because the arbitrator will not be unbiased. Moreover, it will not be efficient to force her to arbitrate, because she will be forced to sustain parallel trials in different fora.

All of these arguments address the wisdom of arbitration as a whole and more specifically arbitration of sexual harassment claims. Whether it is wise to send this type of claim to arbitration is not a question for this court to decide. District courts are bound to follow the precedents set by higher courts. And, that precedent is quite clear: Barker's claims are included within the ambit of claims proper for arbitration. Sadly, sexual harassment, up to and including sexual assault, is a reality in today's workplace. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275 (1998); *Harvill v. Westward Commc'ns*, 433 F.3d 428 (5th Cir. 2005); *Hockman v. Westward Commc'ns. LLC*, 407 F.3d 317 (5th Cir. 2004); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405 (5th Cir. 2002); *Waltman v. Int'l Paper Co.*, 875 F.2d 468 (5th Cir. 1989). Congress has provided a remedy for employees under Title VII. 42 U.S.C. § 2000e, *et seq.* Although Congress has expressly exempted certain types of employment claims from the reach of the Federal Arbitration Act, it has not addressed sexual harassment claims. *See, e.g., Rojas*, 87 F.3d at 750. Therefore, unless and until Congress tells the courts that binding contracts to arbitrate do not include these types of claims, Barker's policy arguments cannot prevail. For all of the foregoing reasons, Barker's claims must be arbitrated pursuant to the arbitration provision of her employment contract.

## II.     Galen Barker

Galen Barker brings a claim for loss of consortium based on the primary torts alleged by Tracy Barker.  Galen Barker was not a signatory to the Employment Agreement between Tracy Barker and the Halliburton defendants.  Therefore, his claim is not subject to arbitration.  However, his claim is entirely derivative of his wife's claims.  The Fifth Circuit has held that where the claims "are based on the same operative facts and are inherently inseparable," the non-arbitrable claims may be stayed pending the outcome of the arbitration.  *Harvye v. Joyce*, 199 F.3d 790, 795-96 (5th Cir. 2000).  Staying Galen Barker's claim promotes the federal policy of arbitration.  *Id.* ("If [the non-signatory party] were forced to try the case, the arbitration proceedings would be both redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration.").  Accordingly, Galen Barker's claim will be stayed pending the outcome of the arbitration.

## III.    Sanctions

Last, the Halliburton defendants move the court to sanction Barker for the costs of defending their right to arbitrate.  Sanctions under 28 U.S.C. § 1927 require that the proceedings be multiplied in a way that is vexatious and unreasonable.  The court does not find support in the record for a determination that Barker's arguments are unreasonable.  *See Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 291-92 (5th Cir. 2002) (sanctions awarded when explanations of counsel for absence of witness causing rescheduling of hearing not credible).  Therefore, the court will not award sanctions.

### CONCLUSION

Pending before the court is defendants' motion to compel arbitration, to stay proceedings, and for imposition of sanctions.  Dkt. 40.  Based on the foregoing reasoning, the motion to compel

arbitration of Tracy Barker's claims and stay Galen Barker's claims is GRANTED, and the motion for sanctions is DENIED.

It is ORDERED that Tracy Barker's claims be DISMISSED, and Galen Barker's claims are STAYED pending resolution of Tracy Barker's claims in arbitration.

It is so ORDERED.

Signed at Houston, Texas on January 30, 2008.

_____
Gray H. Miller
United States District Judge