# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| TRACY K. BARKER, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-2677 |
| | § | |
| HALLIBURTON COMPANY, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM ORDER AND OPINION

Pending before the court is plaintiffs' motion for reconsideration of the court's order compelling arbitration. Dkt. 70. Upon consideration of the motion, the response, and the applicable law, the motion is DENIED.

## BACKGROUND

The facts of the case may be found in the court's memorandum order and opinion compelling arbitration on Tracy Barker's claims. Dkt. 65. On the same day that the order issued, Barker's counsel informed her that he would not represent her at arbitration. She procured new counsel, who then filed the instant motion for reconsideration raising two new legal theories.

## ANALYSIS

First, Barker now argues that the Federal Arbitration Act does not apply to her based on the exemption in section 1 of the FAA for employment contracts of transportation workers. Second, Barker argues that the scope of the arbitration clause should be determined under Texas law, and Texas law prohibits arbitration of personal injury claims absent the signature of counsel on the arbitration agreement. For the reasons detailed below, both arguments are unavailing in the instant case.

A.  **Transportation Workers under the FAA**

Section 1 of the FAA provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Applying the maxim of *ejusdem generis,* the Supreme Court has held that the residual clause "and any other class of workers" must be controlled and defined by reference to the terms "seamen" and "railroad employees." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113, 121 S. Ct. 1302 (2001). Additionally, the Court pointed out that seamen and railroad employees were specific classes of workers for whom Congress had already supplied dispute-resolution schemes. *Id.* at 121. The Fifth Circuit has also read the exclusionary clause narrowly to apply only to those "workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996).

The Eighth Circuit has synthesized the inquiries used by various courts in making the determination into a non-exclusive list of factors.

> (1)  whether the employee works in the transportation industry;
> (2)  whether the employee is directly responsible for transporting the goods in interstate commerce;
> (3)  whether the employee handles goods that travel interstate;
> (4)  whether the employee supervises employees who are themselves transportation workers, such as truck drivers;
> (5)  whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA;
> (6)  whether the vehicle itself is vital to the commercial enterprise of the employer;
> (7)  whether a strike by the employee would disrupt interstate commerce; and
> (8)  the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties (i.e., a truck driver whose only job is to deliver goods cannot perform his job without a truck).

*Lenz v. Yellow Transp., Inc*., 431 F.3d 348, 352 (8th Cir. 2005).  The factors clearly do not weigh in favor of classifying Barker as a worker actually engaged in the movement of goods.

Barker does not work in the transportation industry.  She is not directly responsible for transporting goods.  While she does order the goods and receive them when they arrive, that would fall more into the third factor—that she "handles goods" that travel interstate.  No other factor applies to her.  She does not supervise transportation workers, nor does she belong to a class of employee for whom special arbitration already existed when the FAA was enacted.  There is no vehicle central to the commercial enterprise of her employer.  And, if the procurement staff were to go on strike, interstate commerce would not be disrupted.  Last, since there is no identifiable vehicle attached to her job, there is no nexus to a vehicle for the court to examine.

Barker argues that she is the first and last step in the movement of the goods in interstate commerce, because she orders the goods and then receives them.  And, she points to *Palcko v. Airborne Express, Inc.* where the Third Circuit held that a supervisor of delivery drivers was exempt as a transportation worker.  *Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir. 2004).  The court notes that there are also other cases where employees who did not physically transport goods were still considered transportation workers.  *Bacashihua v. United States Postal Serv.*, 859 F.2d 402, 405 (6th Cir. 1988) (postal worker); *Am. Postal Workers Union v. United States Postal Serv.*, 823 F.2d 466 (11th Cir. 1987) (same).  However, in all three of these cases, the employee in question worked for a company whose business was the transportation of goods—Airborne Express and the Postal Service.  Additionally, workers who worked for companies whose business facilitated transportation, but were not themselves transportation companies, have been found to be tangential to the transportation itself and therefore not exempt.  *Perez v. Globe Airport Sec. Serv., Inc.*, 253 F.3d

1280, 1284 (11th Cir.2001) (pre-departure security agent at an international airport who inspected goods and people at the airport); *Cole v. Burns Int'l Sec. Serv.*, 105 F.3d 1465, 1472 (D.C.Cir.1997) (security guard at a train station).

The Supreme Court in *Circuit City* held that the exclusionary clause of the FAA should be read narrowly to apply only to those workers who play a "necessary role in the free flow of goods." *Circuit City*, 532 U.S. at 121.  The court finds that Barker's job in the procurement department does not fall into the narrow category of jobs that Congress intended to exclude.  Accordingly, the FAA applies to her claims.

### B.    Determining the Scope of the Arbitration Agreement

Next, Barker argues that Texas law applies to the determination of the scope of the arbitration.  The agreement reads in relevant part:

> This Agreement is formed in the State of Texas, and shall be governed by and construed in accordance with the laws of the State of Texas; except that with respect to all matters or disputes related to the validity or enforceability of provision 26 below, all issues shall be governed by and construed in accordance with the Federal Arbitration Act.

*See* Dkt. 70 at 8.  Barker contends that the provision on its face places only the validity and the enforceability—not the scope—within the ambit of the FAA.  Therefore, she argues, although the enforceability and validity of the agreement is governed by the FAA, the court should look to Texas law to see if her claims fall into the scope of the agreement.  Barker submits that her personal injury claims do not, because the Texas General Arbitration Act prohibits arbitration of personal injury claims unless at the time the agreement is signed each party is represented by counsel who sign the agreement along with the parties.  TEX. CIV. PRAC. & REM. CODE § 171.002©).  The parties do not

4

dispute that Barker was not represented by counsel when she signed the agreement.  And, clearly there is no counsel's signature on the agreement.

Assuming for the sake of argument that Barker's extra-contractual claims are personal injury claims—which is not at all clear—the FAA would still compel arbitration in this case.  Because the parties did not expressly exclude the FAA from the determination of the scope of the agreement, it still applies.  *Freudensprung v. Offshore Technical Servs, Inc.*, 379 F.3d 327 , 338 n.7 (5th Cir. 2004) ("Where, as here, an agreement contains a clause designating Texas law but does not exclude the FAA, the FAA and Texas law, including that state's arbitration law, apply concurrently because Texas law incorporates the FAA as part of the substantive law of that state.").  And, since the FAA applies to the scope, it preempts the TAA.  *Id.* (citing *Pedcor Mgmt. Co., Inc. Welfare Benefit Plan v. Nations Personnel of Texas, Inc.*, 343 F.3d 355, 361 (5th Cir. 2003); *Miller v. Pub. Storage Mgmt., Inc.*, 121 F.3d 215, 217-19 (5th Cir. 1997)); *see also L & L Kempwood Assocs. v. Omega Builders, Inc.*, 9 S.W.3d 125, 127-28 & n. 15 (Tex. 1999).

The FAA preempts state law if that law "thwart[s] the goals and policies of the FAA."  *In re D. Wilson Constr. Co v. Brownsville Indep. Sch. Dist.*, 196 S.W.3d 774, 780 (Tex. 2006).  The Texas Supreme Court has articulated a four step inquiry for deciding whether the FAA preempts the TAA in a particular case.  *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005).  The court must determine "whether (1) the agreement is in writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under traditional contract defenses, and (4) state law affects the enforceability of the agreement."  *Id.*  Here, the first two steps are undisputed.  And, in its prior order the court found that the agreement could withstand traditional contract defenses.  Dkt. 65.  Therefore, the court must examine whether state law affects the enforceability of the agreement.  Texas law can

affect the agreement's enforceability by refusing "to enforce an arbitration agreement that the FAA would enforce, either because (1) the TAA has expressly exempted the agreement from coverage, or (2) the TAA has imposed an enforceability requirement not found in the FAA." *D. Wilson*, 196 S.W.3d at 780 (internal citations omitted). Here, Texas law runs afoul of the FAA for both reasons. First, it has exempted personal injury suits from arbitration. *Id.* (citing Tex. Civ. Prac. & Rem. Code § 171.002(a)). And, second, by requiring the presence and signature of counsel, the TAA has added an additional enforceability requirement. *Nexion*, 173 S.W.3d at 69. Therefore, because the TAA would refuse to enforce the arbitration agreement where the FAA would enforce it, the FAA preempts the TAA. *See id.* (FAA preempts the TAA because § 171.002©) adds an enforceability requirement); *Feudensprung*, 379 F.3d at 338 n.7 (compelling arbitration of personal injury claims because the FAA preempts the TAA); *Miller*, 121 F.3d at 219 (preempting retaliation claims).

## CONCLUSION

Pending before the court is Barker's motion for reconsideration of the court's order compelling arbitration. Dkt. 70. For the reasons detailed above, the motion is DENIED.

It is so ORDERED.

Signed at Houston, Texas on April 25, 2008.

_____

Gray H. Miller
United States District Judge